* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Chapman and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Chapman with modifications.
 * * * * * * * * * * * *Page 2 
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction of the parties and of the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. No parties appear in a representative capacity.
4. The employer-employee relationship, as defined by N.C. Gen. Stat. § 97-2(2), existed between the parties on February 17, 2005.
5. The employer was self-insured on February 17, 2005 with its workers' compensation claim being administered by the Schaffer Companies on that date. As of February 1, 2006, Sedgwick CMS administers the workers' compensation claims.
6. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
7. The plaintiff's average weekly wage was sufficient to generate the maximum compensation rate.
8. In addition, the parties stipulated into evidence the following:
 a. Packet of documents including accident report, recorded statement, statement of Deione Cobb, discovery responses and medical records;
 b. Packet of Industrial Commission forms;
 c. Transcript of recorded statement; and *Page 3 
 d. Packet of discovery responses.
9. The Pre-Trial Agreement dated February 9, 2006, which was submitted by the parties, is incorporated by reference.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. The plaintiff was fifty-eight years old at the time of hearing before the Deputy Commissioner, and had obtained an associate's degree in fire protection and safety engineering. In August 1980, the plaintiff began working for the defendant's predecessor, Federal Paper Board, and he continued working at the paper mill after the defendant purchased the facility. His position was safety supervisor and his duties included a wide variety of tasks associated with managing the safety program, the fire protection program, the industrial hygiene program, health services, the workers' compensation program, and occasionally the security functions of the paper mill. As part of his duties, the plaintiff had to periodically climb and bend in order to check equipment to determine whether it met OSHA requirements and the company's safety regulations.
2. At approximately 5:00 p.m. on Thursday, February 7, 2005, the plaintiff was working at his computer when Deione Cobb, who worked with the janitorial service hired by the company, came to his office to get the trash. The plaintiff had two trash cans under his desk, one of which was for recyclables. He reached under his desk and pulled both of them out, but a catalog cover fell out of his regular trash can because it was so full. Consequently, he stood and bent over in order to reach under his desk to get it. As he was bending over in this manner, the plaintiff suddenly experienced a sharp *Page 4 
pain in his low back. Ms. Cobb inquired about him because of his reaction, and he told her that he had hurt his back.
3. Following the incident, the plaintiff continued working for another half-hour before he went home for the day. He worked the next day but began to notice weakness in his right leg in addition to some continuing back pain. Nevertheless, the plaintiff thought that he would be all right. Over the weekend, his symptoms worsened and his leg began to get numb. He worked on Monday despite considerable pain and discomfort. The next day, the plaintiff had trouble walking so he called Dr. Williams, his family doctor, who saw him that day.
4. Dr. Williams noted that the plaintiff's Achilles reflex was absent on the right side and that he had decreased motor strength and sensory deficits. The doctor diagnosed him with S1 radiculopathy and prescribed a steroid dose pack for him. Due to the dramatic findings on examination, the doctor ordered an MRI and made arrangements for the plaintiff to see to Dr. Melin, a neurosurgeon.
5. The plaintiff was supposed to go to Raleigh for meetings on Wednesday. He called his supervisor, Brian Brogden, to advise that he would not be able to make the trip because he was having back problems, but he deliberately chose not to tell Mr. Brogden about the injury at work. He perceived that, as safety director, his having a work-related injury would be a serious blow to his career. The company had experienced some costly workers' compensation claims and the plaintiff had been given the responsibly of reducing the mill's workers' compensation expenditures. In fact, when he had been given his performance review the previous summer, he had been criticized to some degree for failing to get workers' compensation costs down.
6. The plaintiff continued to hope that his condition was not serious. However, he saw Dr. Melin on February 23, 2005, and was informed that the MRI had revealed a herniated disc at L5-S1. *Page 5 
Dr. Melin wanted him to stay out of work until Monday and recommended that he wait to see if his symptoms would improve with conservative treatment before considering surgery.
7. On Friday, February 25, 2005, the plaintiff finally told Mr. Brogden about the injury at work. In view of the awkward situation created by his position, he offered to file his medical bills on group health insurance if the company would pay the deductible. Mr. Brogden advised him later that day to file for workers' compensation, so the plaintiff called Kim Overton, a company nurse, who filled out an accident report based upon the information he provided and also notified the third party administrator. An adjuster called the plaintiff the next Monday and he gave a recorded statement explaining what had occurred. He requested a Form 18, which he subsequently received, completed, and submitted to his employer and to the Industrial Commission.
8. On February 28, 2005, before he gave the recorded statement, the plaintiff returned to Dr. Melin. His pain was significantly improved but he still had the neurological signs. In view of his improvement, the plaintiff wanted to defer surgery. However, during the next couple of days, his symptoms worsened as he increased his activities. When the plaintiff returned to see Dr. Melin on March 2, he had significant weakness and paresthesia in his right leg. Consequently, at that time the plaintiff opted to have surgery. On March 3, 2005, Dr. Melin operated on the plaintiff's back to decompress the L5-S1 interspace.
9. The surgery was authorized in advance by the defendant. However, while the plaintiff was at the hospital being prepared for the operation, the defendant attempted to withdraw the authorization. It was too late at that time to actually notify the doctor and cancel the procedure.
10. At the follow-up appointment with Dr. Melin on March 30, 2005, the plaintiff reported that his pain had been completely relieved by the operation but that, although significantly improved, he *Page 6 
still had some right leg weakness and decreased sensation along the side of his foot. The plaintiff's right ankle reflex was still absent, as well. It was Dr. Melin's practice to keep patients out of work for six weeks following the type of surgery the plaintiff had undergone, and then to allow them to return to work at light duty. However, he would not document restrictions in his note unless so requested because of prior problems with employers not allowing patients to return to work without a full release even though their regular jobs would qualify as light duty. Dr. Melin therefore released the plaintiff to return to work effective April 18, 2005, without noting any restrictions.
11. The plaintiff was anxious to return to work and anticipated that he could control his work activities for the next two to six weeks, the period in which Dr. Melin would restrict a post-operative patient from climbing, crawling, bending, and stooping activities. Consequently, he reported for work on April 18, 2005. However, shortly after the plaintiff arrived at the paper mill, his supervisor informed him that he was being suspended for failing to report his injury on a timely basis. The company paid him his salary but would not allow him to report for work until June 8, 2005 when he was terminated.
12. Dr. Melin's physician's assistant released the plaintiff from medical care on April 27, 2005, and noted that the plaintiff was doing well at that time.
13. After his termination, the plaintiff looked for employment elsewhere. He was able to find some short-term temporary jobs working as a safety officer for another company during plant shutdown operations. However, he had not found other employment as of the date of hearing.
14. On February 6, 2006, the plaintiff returned to Dr. Melin's office and saw the physician's assistant. He reported problems with back and bilateral leg pain, which was worse on the right side. The plaintiff's Achilles reflex had partially returned, but he had diminished sensation on the *Page 7 
side of his foot and appeared to have some weakness of plantar flexion. Another MRI was ordered. As of the date of the deposition, Dr. Melin had not seen the MRI films but, based upon the report of the radiologist, was concerned that the plaintiff may have sustained a recurrent disc herniation. However, Dr. Melin needed to see the MRI and to examine the plaintiff again before he would be able to express an opinion regarding whether the plaintiff had sustained a material change for the worse in his condition that would require further treatment.
15. Defendant did not file a Form 61 statement of denial in a timely manner.
16. On February 17, 2005, the plaintiff sustained a specific traumatic incident of the work assigned when he bent over to reach a piece of trash which had fallen to the floor under his desk. As a result of the specific traumatic incident, he sustained a ruptured disc at L5-S1.
17. As a result of this specific traumatic incident, the plaintiff was unable to work from approximately February 24 through April 17, 2005. He returned to work on April 18, 2005, and believed that he was capable of performing his regular job duties at that time. Defendant, however, placed the plaintiff on disciplinary suspension for failing to report his injury on a timely basis but paid him his salary until he was terminated in June. Even if the plaintiff had not been suspended and had initially had trouble performing his job duties, he would have been able to perform them no later than twelve weeks after his operation, which would have been within the period he was being paid his regular salary. Consequently, the Full Commission finds that the plaintiff did not prove that he suffered a loss of earning capacity after April 18, 2005, due to his back injury.
18. The plaintiff reached maximum medical improvement on approximately April 27, 2005. He sustained a seven percent permanent partial disability to his back as a result of the specific traumatic incident giving rise to this claim. *Page 8 
19. No findings are made regarding whether the plaintiff sustained a material change for the worse in his back condition after he reached maximum medical improvement, as this issue is not presently before the Commission.
20. Prior to February 25, 2005, when the plaintiff informed his supervisor and the company nurse of his injury, the defendant did not have knowledge of the injury, the plaintiff was not prevented from giving notice to them because of any physical or mental incapacity or because of any fraud or deceit of a third person. He was quite aware of the requirement to report injuries promptly. Although he might have had good reason for not doing so, it was his deliberate choice not to notify his employer.
21. In its discovery responses, the defendant admitted that the plaintiff's supervisor spoke to Ms. Cobb to verify her observations on the date in question. The defendant has not offered any evidence to seriously challenge the compensability of this claim. To the extent that the defendant denied the claim, the defendant defended the case without reasonable grounds, and to the extent that the defendant failed to pay the expenses of the plaintiff's operation after having authorized it, the defendant violated N.C. Gen. Stat. § 97-90(e). However, there were issues raised by the plaintiff related to his temporary total disability after April 17, 2005, that were properly contested by the defendant.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. The plaintiff sustained an injury by accident arising out of and in the course of his employment with the defendant when he sustained a back injury as the result of a specific traumatic incident of the work assigned on February 17, 2005. N.C. Gen. Stat. § 97-2(6). *Page 9 
2. The plaintiff is not entitled to receive compensation prior to February 25, 2005, because the plaintiff did not give defendant notice of the injury until February 25, 2005. N.C. Gen. Stat. § 97-22. The plaintiff knew to provide prompt notice, defendant had no prior knowledge of the injury, and the plaintiff was not prevented from giving notice due to physical or mental incapacity or the fraud or deceit of a third person. Id.
3. The plaintiff is entitled to compensation at the rate of $704.00 per week for seven and 3/7ths weeks for the temporary total disability he sustained as a result of this injury by accident. N.C. Gen. Stat. § 97-29.
4. The plaintiff is entitled to compensation at the rate of $704.00 per week for twenty-one weeks for the seven percent (7%) permanent partial disability he sustained to his back as a result of the February 17, 2005 injury by accident. N.C. Gen. Stat. § 97-31(23).
5. The plaintiff is entitled to have the defendant provide all medical compensation arising from this injury by accident beginning February 25, 2005. N.C. Gen. Stat. §§ 97-2(19); and 97-25.
6. The plaintiff is entitled to have attorney's fees assessed against the defendant because the defendant denied the compensability of this case without reasonable grounds and failed to pay the expenses associated with the plaintiff's back surgery, which they had previously authorized. N.C. Gen. Stat. §§ 97-88.1; and 97-90(e).
7. Sanctions should be assessed against the defendant for its failure to file the Form 61 on a timely basis. N.C. Gen. Stat. § 97-18 (c); and Industrial Commission Rules 103 and 802.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following: *Page 10 
 AWARD
1. The defendant shall pay compensation to the plaintiff at the rate of $704.00 per week for seven and 3/7ths weeks for his temporary total disability. This compensation has accrued and shall be paid to the plaintiff in a lump sum.
2. The defendant shall pay compensation to the plaintiff at the rate of $704.00 per week for twenty-one weeks for the seven percent (7%) permanent partial disability rating to his back. This compensation has also accrued and shall be paid to the plaintiff in a lump sum.
3. The defendant shall pay all medical expenses incurred by the plaintiff as a result of this injury by accident, beginning February 25, 2005.
4. The defendant shall pay directly to the plaintiff's counsel a reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation awarded to the plaintiff herein. This fee shall not be deducted from the compensation awarded to the plaintiff herein; rather, this fee is taxed as a cost to the defendant pursuant to N.C. Gen. Stat. § 97-88.1. Because this fee is based upon compensation that has accrued, it shall be paid to the plaintiff's counsel in a lump sum.
5. The defendant shall pay sanctions in the amount of $250.00 for its failure to file the Form 61 statement of denial in a timely manner.
6. The defendant shall pay the costs.
This 23rd day of April 2007.
S/____________________ CHRISTOPHER SCOTT COMMISSIONER *Page 11 
CONCURRING:
 S/____________________ BUCK LATTIMORE CHAIRMAN
 S/____________________ LAURA KRANIFELD MAVRETIC COMMISSIONER